2009 OK CR 21

**Randal Ray HUNT, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. D–2006–600.

Court of Criminal Appeals of Oklahoma.

July 24, 2009.

---

Heidi Baier, Marna Franklin, Assistant Public Defender, Oklahoma City, OK, counsel for appellant at trial.

C. Wesley Lane II, District Attorney, Stephen Deutsch, Lynne McGuire, Assistant District Attorneys, Oklahoma City, OK, counsel for the State at trial.

Andrea Digilio Miller, Assistant Public Defender, Oklahoma City, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

## OPINION

LUMPKIN, Judge.

¶ 1 Appellant Randal Ray Hunt was tried by jury and convicted of First Degree Malice Murder (21 O.S.2001, § 701.7(A)), Case No. CF–2004–983, in the District Court of Okla-

homa County. The jury found the existence of three aggravating circumstances and recommended the punishment of death.[1] The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[2]

¶ 2 Appellant was convicted of the first degree murder of Wynona Reames. The couple, who shared an apartment in northwest Oklahoma City, had a turbulent relationship. On February 14, 2004, the decedent failed to show up for work as scheduled. The decedent's mother and aunt found the decedent's lifeless body slumped on the couch in her apartment. The decedent had been stabbed ten times in the chest and abdominal area. The neck of a broken beer bottle was found jammed between her back and the sofa cushion. A bloodied, broken knife was found near her right foot. Appellant was located later that day at the apartment of another girlfriend, approximately five miles north of the crime scene. Appellant had a large Ace-type bandage on his left wrist and dried blood on his hands.

¶ 3 Appellant testified at trial that he did not intend to kill the decedent but acted in self-defense when she met him at the door armed with two knives.

## PROPOSITIONS

¶ 4 On appeal, Appellant raises twenty-one propositions of error. In his first proposition, he alleges error which requires that this case be reversed and remanded for a new trial. Thus, this Court will not reach the merits of the other claims which do not require relief. As we are granting relief in this case, we find that Appellant's motions for evidentiary hearings are moot and need not be addressed.

¶ 5 In his first proposition Appellant contends he was denied his right of confronta-

1. The three aggravators found by the jury included: 1) that Appellant had been previously convicted of a felony involving the use or threat of violence to the person; 2) the murder was especially heinous, atrocious or cruel; and 3) there exists a probability that the defendant will commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S. 2001, § 701.12(1)(4) & (7).

2. Appellant's Petition in Error was filed in this Court on November 29, 2006. Appellant's brief was filed June 12, 2007. The State's brief was filed September 21, 2007. The case was submitted to the Court October 3, 2007. Appellant's reply brief was filed October 11, 2007. Oral argument was held June 3, 2008.

tion under the Sixth Amendment by the admission of State's Exhibit 79, an audio recording of a 911 call made by the decedent to the Oklahoma City Police Department on December 18, 2003, regarding a beating she had suffered at the hands of Appellant two and a half hours earlier. The police initially went to the decedent's apartment after receiving a hang-up 911 call on the evening of the 18th. After making contact with the decedent, the police left at her urging, despite observing evidence that she had been beaten. Approximately two and half hours later she called the police back and described the beating she received from Appellant and her resulting injuries. Yet, she told the dispatcher she was ambivalent towards having Appellant arrested. At the time of the call, Appellant was asleep on the decedent's couch.

¶ 6 The State sought to admit the 911 tape as evidence of other crimes relevant to show Appellant's motive, intent, and absence of mistake or accident for the charged murder. The State also argued the tape was admissible as an exception to the hearsay rule as evidence of the decedent's state of mind, an excited utterance, or a present sense impression. In objecting to the State's arguments, defense counsel relied on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and argued the tape was non-testimonial hearsay whose admission was prohibited by the Confrontation Clause. The trial court overruled the defense objection, finding *Crawford* not applicable. At the time the 911 tape was admitted into evidence, the court admonished the jury that the tape was "not offered to you to prove any facts in this case except it is offered to show the victim's state of mind and you should not consider it as evidence as to whether or not this defendant committed the crime charged in this case." [3]

¶ 7 Now on appeal, Appellant argues the tape was testimonial hearsay which denied him the right of confrontation under the Sixth Amendment. In its appellate brief, the State responds that pursuant to the "forfeiture by wrongdoing doctrine", Appellant has forfeited his claims to any confrontation clause violations.

■ ¶ 8 The "forfeiture by wrongdoing" doctrine is an exception to the hearsay rule, codified in the Federal Rules of Evidence, Rule 804(b)(6), which permits into evidence "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." In the recent case of *Giles v. California*, —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), the United States Supreme Court addressed the application of the doctrine by the California courts. The Supreme Court held that the forfeiture by wrongdoing exception applied only in cases where the defendant intended to make a witness unavailable. 128 S.Ct. at 2683–84. The Court explained that where the evidence suggested that the defendant wrongfully caused the absence of the witness, but had not done so to prevent the witness from testifying, unconfronted testimony was excluded unless it fell within the separate common law exception to the confrontation requirement for dying declarations. *Id.*, at 2684.

¶ 9 The forfeiture by wrongdoing exception to the hearsay rule has not been adopted in Oklahoma; however, we find the analysis by the U.S. Supreme Court in *Giles v. California* to be applicable and adopt it here. While Appellant was arrested as result of the December 18th assault on the victim, there was no argument or evidence at trial that Appellant killed the victim with the intent to prevent her from testifying against him. This case is further distinguishable from *Giles* in that the Supreme Court addressed the relationship between the confrontation requirement and the two hearsay exceptions of dying declarations and forfeiture by wrongdoing. The Court did not address the state of mind exception involved in this case.

¶ 10 However, placing this statement under the state of mind exception to the hearsay rule does not end our analysis for purposes of the Confrontation Clause. In the context of the Confrontation Clause, the Supreme Court has held there are two types of

hearsay—testimonial and non-testimonial. *Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364. While the Supreme Court has not set forth a definitive list of what qualifies as testimonial hearsay, it does include "statements that were made under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial." 541 U.S. at 52, 124 S.Ct. at 1364. *See also Mitchell v. State,* 2005 OK CR 15, ¶ 16, 120 P.3d 1196, 1202. The 911 tape in this case contains statements of past events which fit that description.

▮ ¶ 11 Certain statements on the tape clearly illustrate the decedent's fear of Appellant and therefore her state of mind. However, there are also statements on the tape accusing Appellant of causing her injuries due to a beating she received from him two and half hours earlier because she asked him to drive her to a nearby fast food restaurant.[4] These accusatory statements, relating past events, would be the same as live testimony if Appellant had gone to trial for the assault on the decedent. Therefore, those portions of the 911 tape were inherently testimonial and subject to the confrontation requirement. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. As the testimonial portions of the 911 tape do not fall within the dying declaration exception to the hearsay rule and as Appellant was unable to confront the decedent on the statements, the statements were improperly admitted.

▮ ¶ 12 Violations of the Confrontation Clause are subject to harmless error analysis. *Mitchell,* 2005 OK CR 15, ¶ 38, 120 P.3d at 1207; *Livingston v. State,* 1995 OK CR 68, ¶ 17, 907 P.2d 1088, 1093. In the face of such an evidentiary error, the proper inquiry on

appellate review is whether the appellate court has grave doubts that the outcome of the trial would have been materially affected had the error not occurred. *Mitchell,* 2005 OK CR 15, ¶ 38, 120 P.3d at 1207. We have just such doubts in this case.

¶ 13 Appellant claimed he killed the decedent in self-defense as the two fought. Witnesses testified to the volatile relationship between Appellant and the decedent. Appellant had the opportunity to cross-examine those witnesses. However, the decedent's claims on the 911 tape that Appellant had beaten and injured her weeks before her death went unchallenged. In light of this evidence, we cannot be sure that admission of the 911 tape did not ultimately affect the outcome of the trial and we cannot conclude its admission was harmless beyond a reasonable doubt. Therefore, the case is reversed and remanded for a new trial.

### *DECISION*

¶ 14 The **JUDGMENT** and **SENTENCE** is **REVERSED** and the case is **REMANDED FOR A NEW TRIAL.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2008), the MANDATE is ORDERED issued upon delivery and filing of this decision.

CHAPEL and LEWIS, JJ., concur.

C. JOHNSON, P.J., and A. JOHNSON, V.P.J., concur in result.

C. JOHNSON, P.J., Concurring in result:

¶ 1 I concur in the Court's decision to remand this case for a new trial, due to the admission of unfairly prejudicial hearsay statements made by the victim several weeks

---

4. In *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court found that statements made by a Ms. McCottry describing a beating she received from her boyfriend as she was being beaten were not testimonial as she spoke about events as they actually happened rather than describing past events. 547 U.S. at 826–828, 126 S.Ct. at 2276–2277. Once the beating ended and the defendant left the scene, the emergency had passed and the conversation became testimonial. *Id.* The Court also considered statements made by a Ms. Hammond who described a beating she received from

her husband. However, the statement was made after the beating ceased and she was separated from her husband. The Supreme Court found the statement testimonial as there was no emergency in progress, the statements related to past events, and there was no immediate threat to the declarant. 547 U.S. at 829–830, 126 S.Ct. at 2278. In the present case, Appellant was asleep on the couch in the apartment as the victim went outside the make the 911 call. Under the particular facts of this case, we find the statements more akin to those made by Ms. Hammond and therefore testimonial.

before the homicide. I write separately to make a few important points about the so-called "forfeiture by wrongdoing" exception to the general ban on hearsay. First, while this exception has its roots in the common law, it has never been a part of our Evidence Code, and I believe that the Legislature should have an opportunity to consider whether such a rule is appropriate in our state. Even if such a rule were appropriate, the United States Supreme Court's recent ruling in *Giles v. California*, —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), recognizes reasonable limitations on this doctrine, to keep it from violating the Sixth Amendment right to confront one's accusers.

¶ 2 In *Giles*, the Supreme Court recognized that, as a matter of fairness, a defendant should not profit from his own wrongdoing. If he prevents a witness from testifying, then he forfeits his constitutional right to confront that witness about any out-of-court statements the witness may have made, and the same may be admitted against him. A majority of the Court in *Giles* found historical evidence for requiring some showing that the defendant had in mind the particular purpose of making the declarant unavailable as a witness, before the declarant's hearsay statements could be admitted under the "forfeiture by wrongdoing" exception. The exception should not be *carte blanche* to allow all hearsay statements made by a person that the defendant is accused of unlawfully killing.[1] Any future consideration of such a rule in Oklahoma should, of course, heed the Supreme Court's interpretation in *Giles*. If it is the intent of the majority to judicially adopt this hearsay exception, it should give the trial courts of this State guidance in how to evaluate and apply the doctrine.[2]

---

1. The State's argument in favor of admissibility goes thus: "If Defendant wanted to confront [the declarant] as a witness in a court of law regarding her statements of December 18, 2003, to the 911 operator and police, he should not have murdered her." (Appellee's Brief at 20) Obviously, whether the defendant murdered the declarant is the whole point of the trial. The circularity of such reasoning was noted by Justice Souter's separate opinion in *Giles*. *See Giles*, —— U.S. at ——, 128 S.Ct. at 2694 (Souter, J., concurring in part) ("Equity demands something more than this near circularity before the right to confrontation is forfeited, and more is supplied by showing intent to prevent the witness from testifying").

2. The "forfeiture by wrongdoing" exception found in the Federal Rules of Evidence (Rule 804(b)(6)) was added in 1997. It makes an exception from the general ban on hearsay for "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The exception applies to all parties, including the government. Comments to this rule indicate that the court should evaluate the admissibility of such statements under a preponderance-of-evidence standard.